Richard David NORRIS, Plaintiff,

v.

LUMBERMEN'S MUTUAL CASUALTY COMPANY, Defendant.

Civ. A. No. 87-3002-H.

United States District Court,
D. Massachusetts.

April 29, 1988.

Ernest C. Hadley, Wareham, Mass., for plaintiff.

Kalvin M. Grove, Fox & Grove Chartered, Chicago, Ill., Thomas D. Burns, Burns & Levinson, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER

HARRINGTON, District Judge.

*Procedure*

This case arises from a civil action which Plaintiff originally brought in Plymouth

Superior Court, and which Defendant removed to federal district court. The Complaint has three counts. Count I sounds in contract and alleges that "Defendant ... intentionally breached the implied covenant of good faith and fair dealing in violation of public policy, by terminating the Plaintiff's employment in retaliation for the faithful performance of his employment duties." Count II alleges wrongful interference with contractual relations.

Count III is a tort claim for wrongful discharge. It alleges that Defendant wrongfully terminated the Plaintiff's employment for reasons related to nuclear safety, which contravene public policy.

Defendant has filed motions to dismiss Counts I and III, pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure, lack of subject matter jurisdiction, on the ground that the claim was preempted by Section 210 of the Energy Reorganization Act, 42 U.S.C. Section 5851, commonly referred to as "the whistleblower provision." *See English v. General Electric Company*, 683 F.Supp. 1006 (E.D.N.C.1988) (1988 WL 30288). When confronted by a motion to dismiss, a Complaint must be construed in the light most favorable to the Plaintiff and its allegations taken as true. *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 1848–49, 23 L.Ed.2d 404, *reh'g. denied*, 396 U.S. 869, 90 S.Ct. 35, 24 L.Ed.2d 123 (1969).

In the alternative, Defendant moves to dismiss Counts I and III pursuant to Fed. R.Civ.P. 12(b)(6), for failure to state a claim on which relief can be granted. Defendant also moves to dismiss Count II under Rule 12(b)(6). For reasons discussed below, the Court grants Defendant's motion to dismiss Counts I and III on grounds of preemption, but denies Defendant's motion to dismiss Count II.

*Statement of Facts*

Defendant Lumbermen's Mutual Casualty Company ("Lumbermen's") is a corporation which provides insurance and inspectional services to nuclear power plants located in the United States. Plaintiff held the position of the Northeast Regional Manager, SISS. As Regional Manager, Plaintiff was responsible for establishing and implementing inspectional procedures, for securing clients in the Northeast Region; and for providing direct inspection and audit services to Lumbermen clients.

In April, 1985, Plaintiff investigated a complaint regarding reactor pressure vessels for the Vogle Nuclear Power Station ("Vogle").[1] Plaintiff determined that Defendant's inspector had been negligent in his original inspection, and Plaintiff reported this to his supervisor, Mr. Muise ("Muise"). In mid–1986, Muise ordered Plaintiff to have a supervisor delete this information from the inspector's appraisal report, in anticipation of litigation against the Defendant corporation.

In June, 1986, Plaintiff initiated an inquiry regarding a former employee of Defendant, who worked as an inspection trainee at Seabrook Nuclear Power Plant. Although Plaintiff made findings about the trainee's activities at Seabrook which the Plaintiff determined warranted a full investigation. Defendant advised him to discontinue the inquiry, which he did.

The following December, Plaintiff objected to Muise about a change in an inspection procedure. Plaintiff believed the procedure would have identified defects such as those which were missed in the 1981 Vogle incident. Although the Plaintiff made an internal complaint, he did not pursue the matter further.

In March of 1987, the Public Service Electric and Gas Company ("PSE & G") hired Lumbermen's to conduct an audit at the Salem Nuclear Power Plant. Plaintiff conducted the audit with Lumbermen's knowledge, in his capacity as an employee of the Defendant.

In May of 1987, Defendant's Internal Security Division initiated an investigation of Plaintiff's audit activities at PSE & G. The investigation concluded that Plaintiff's activities at PSE & G constituted a conflict of interest, resulted in Plaintiff's personal

---

1. Pressure vessels are a main component of the water treatment and supply system at Vogle and, in the event of failure, could severely affect the safe operation of the plant.

financial gain, and had been engaged in without Defendant's consent or knowledge. The investigation also concluded that Plaintiff had submitted fraudulent expense vouchers and time sheets between January, 1985 and March, 1987. Plaintiff's Complaint alleges that the charges concerning his PSE & G activities are untrue, and that Defendant encouraged him to misreport expenditures.

On at least two occasions, Defendant contacted PSE & G to disclose false and harmful information regarding Plaintiff's job performance, while Plaintiff was still employed by the Defendant. The Defendant did not, however, inform the Plaintiff about its investigation of him or about its communication with PSE & G. PSE & G subsequently denied plaintiff a position with their firm, after he was discharged by Defendant.

*Preemption*

 The thrust of Defendant's argument is that Counts I and III are preempted, and if they are not preempted, then the complaint fails to state a claim on which relief can be granted. Counts I and III of Plaintiff's Complaint allege a breach of contract and a tortious act based upon a retaliatory firing for "exposing policies, practices and procedures of Defendant which impact upon the safe construction and operation of nuclear power plants, and which violate the regulations of the Nuclear Regulatory Commission ('NRC'), and which expose the public to substantial risk of injury and death from nuclear accidents." Defendant argues that these are state claims, which are preempted by the Supremacy Clause. U.S. Const. Art. VI, cl. 2.

Preemption applies "when it is clear, despite the absence of explicit pre-emptive language, that Congress has intended, by legislating comprehensively, to occupy an entire field of regulation and has thereby left no room for the States to supplement federal law ..." *Animal Legal Defense*

*Fund v. Provimi Veal Corp.*, 626 F.Supp. 278, 282 (D.Mass.), *aff'd.*, 802 F.2d 440 (1st Cir.1986) (quoting *Capital Cities Cable, Inc. v. Crisp,* 467 U.S. 691, 104 S.Ct. 2694, 81 L.Ed.2d 580 (1984)) (citation omitted). The field of nuclear energy is comprehensively regulated by the Atomic Energy Act of 1954, 42 U.S.C. Section 2011, *et seq.*, and thus, the federal government maintains "complete control of the safety and 'nuclear' aspects of energy generation ..." *Pacific Gas and Electric Company v. Energy Resources & Development Commission,* 461 U.S. 190, 212, 103 S.Ct. 1713, 1726, 75 L.Ed.2d 752 (1983). The Court, in *Pacific Gas and Electric* stated that:

> State safety regulation is not pre-empted only when it conflicts with federal law. Rather the Federal Government has occupied the entire field of nuclear safety concerns, except the limited power expressly ceded to the states. When the Federal Government completely occupies a given field or an identifiable portion of it, as it has done here, the test of preemption is whether "the matter on which the State asserts the right to act is in any way regulated by the Federal Act."

*Pacific Gas,* 461 U.S. at 212–213, 103 S.Ct. at 1726–1727 (citation and footnote omitted).

Section 210 of the Energy Reorganization Act ("ERA") of 1974, 42 U.S.C. Section 5851 provides a remedy for employees who believe they have been terminated or otherwise retaliated against for making safety complaints concerning the construction or operation of nuclear power plants.[2] Although the First Circuit has not yet considered the question, there is disagreement among the other circuits regarding the application of Section 5851 to internal complaints, i.e., one in which the NRC is not involved. Three circuits have determined that Section 5851 applies to employees who have been discharged for making internal complaints to their supervisors regarding

---

**2.** Section 5851 provides that no NRC licensee, "may discharge ... or otherwise discriminate against any employee with respect to his compensation, terms, conditions, or privileges of employment" because the employee has testified, given evidence, or brought suit or engaged in "any other action to carry out the purposes" of the Atomic Energy Act (AEA), and the ERA. 42 U.S.C. Section 5851(a).

nuclear safety and quality control. *See Kansas Gas & Elec. Co. v. Brock,* 780 F.2d 1505 (10th Cir.1985), *cert. denied,* 478 U.S. 1011, 106 S.Ct. 3311, 92 L.Ed.2d 724 (1986); *Mackowiak v. University Nuclear Systems, Inc.,* 735 F.2d 1159, 1163 (9th Cir. 1984); *DeFord v. Secretary of Labor,* 700 F.2d 281 (6th Cir.1983). In contrast, the Fifth Circuit has held that internal complaints are not covered by Section 5851. *Brown & Root, Inc. v. Donovan,* 747 F.2d 1029 (5th Cir.1984).

The first step in construing a statute is to read the plain language. Section 5851(a)(3) states that no employer may discharge an employee or otherwise discriminate against any employee "... [who] assisted or participated or is about to assist or participate in any manner in such a proceeding [under the Act] *or in any other action* to carry out the purposes of this Act or the Atomic Energy Act of 1954, as amended." (emphasis added). Plaintiff argues that the phrase, "or in any other action," relates back to the word "proceeding," and therefore, necessarily implies the participation of the employee and the agency in formal proceedings for this statute to apply. He further argues that a specific, such as "proceeding," would not ordinarily be followed by an all-encompassing generality such as "any other action." Although in the abstract this argument has merit, it is defeated by a review of the accompanying NRC regulation, which provides that employee activities are "protected even if no formal proceeding is actually initiated as a result of the employee assistance or participation." 10 C.F.R. Section 50.7(2) (1985). "Regulations are controlling and entitled to great weight if reasonable." *Kansas Gas,* 780 F.2d at 1512 (citing *Donovan v. Hahner, Foreman, and Harness,*

*Inc.,* 736 F.2d 1421, 1425 (10th Cir.1984)). The statute, in conjunction with the language of the regulation, therefore, appears to include internal complaints within the ambit of its protection.

Another element for consideration is the legislative intent of Congress. Both *Kansas Gas,* 780 F.2d at 1513, and *Mackowiak,* 735 F.2d at 1162–1163, have interpreted the intent of Congress to include internal complaints under Section 5851. *Brown* arrives at the opposite conclusion. *Kansas* has criticized *Brown* in this regard, and the opinion in *Kansas* states that, "a narrow, hypertechnical reading of Section 5851 will do little to effect the statute's aim of protection." 780 F.2d at 1512.

This Court considers the analysis of *Kansas Gas* compelling, although it notes that *certiorari* was denied in that case with a dissent by Justices White, joined by Justices O'Connor and Blackmun. 478 U.S. 1011, 106 S.Ct. 3311. The dissenting justices commented that the Tenth Circuit acknowledged the language of the statute did not unambiguously include internal complaints, and the minority recommended review and resolution by the Supreme Court. 478 U.S. 1011–12, 106 S.Ct. at 3312.

Another factor which this Court finds persuasive in ruling that preemption applies is that the Secretary of Labor, who administers Section 5851,[3] has interpreted the statute to give him authority to hold hearings regarding retaliatory actions against employees who have made internal complaints. *See Kansas Gas,* 780 F.2d at 1510. The court should give deference to the agency's interpretation of its enabling statute, unless the plain language of the

---

**3.** 42 U.S.C. Section 5851 provides that if an employee believes he has been discharged or otherwise discriminated against in violation of the Acts, he may file a complaint with the Secretary of Labor within thirty days after the violation occurs. Within thirty days of the receipt of the complaint the Secretary must conduct an investigation and notify the individuals involved of the results. Within ninety days of the receipt of the complaint the Secretary must either deny it or order the offending employer to "(i) take affirmative action to abate the violation, and (ii)

reinstate the complainant to his former position together with the compensation (including back pay), terms, conditions, and privileges of his employment, and the Secretary may order such person to provide compensatory damages to the complainant." (b)(2)(B). The statute also provides for the payment of all costs and expenses, including attorneys' and expert witness fees, as well as providing judicial review of the Secretary's order by a United States Court of Appeals, *Id.* (c).

statute requires an opposite construction. *Id.*

Plaintiff contends that even if the Court were to construe Section 5851 as preempting safety related complaints, it does not preempt his cause of action because the essential issue in this case is not nuclear safety, but whether the federal government preempts state power to adjudicate employer-employee disputes. This question has been addressed recently by three federal district courts and two state supreme courts. *See English v. General Electric Co.*, 683 F.Supp. 1006 (E.D.N.C. 1988) (1988 WL 30288); *Snow v. Bechtel Constr., Inc.*, 647 F.Supp. 1514 (C.D.Cal. 1986); *Stokes v. Bechtel North American Power Corp.*, 614 F.Supp. 732 (N.D.Cal. 1985); *Wheeler v. Caterpillar Tractor Co.*, 108 Ill.2d 502, 92 Ill.Dec. 561, 485 N.E.2d 372 (1985), *cert. denied*, 475 U.S. 1122 (1986); *Chrisman v. Philips Industries, Inc.*, 242 Kan. 772, 751 P.2d 140 (1988).

The court in *English* did not find preemption based upon concerns over nuclear safety. 1988 WL 30288, p. 1012. Rather the *English* court found preemption based upon its review of the employment remedy in Section 210 and its legislative history (citing S.Rep. No. 848, 95th Cong., 2d Sess. 29, reprinted in 1978 U.S.Code Cong. & Ad.News 7303, 7304). The focus of the court's interpretation was that Congress enacted Section 210 primarily for employee protection, and that the particular remedial restrictions of Section 5851 would either conflict with state standards or would frustrate federal objectives. *English*, 1988 WL 30288, p. 1015. The district court found Subsection (g) to be "strong evidence of Congress' intent to preempt state actions for wrongful discharge ..." *English*, 1988 WL 30288, p. 1014.

*Stokes*, a federal district court decision from the Northern District of California, found no preemption of state law wrongful termination claims, based upon its reading of *Silkwood v. Kerr–McGee Corporation*, 464 U.S. 238, 251, 104 S.Ct. 615, 622–23, 78 L.Ed.2d 443 (1984) (allowing state court remedies for radiation injuries in the absence of a federal remedy), the permissive language of Section 210 ("may" file a complaint, "may" apply to the Secretary, etc.); and the statute's legislative history. *Stokes*, 614 F.Supp. at 744. In contrast, the *Snow* court, in the Central District of California, was not persuaded by the permissive language of the statute, and found preemption based upon the availability of an exclusive federal remedy, its reading of the legislative history of Section 210 and the analogous "whistleblower provision" of the Mine, Safety and Health Act. *Snow*, 647 F.Supp. at 1518.

*Wheeler*, an Illinois state supreme court case, ruled that Section 210 did not preempt a valid cause of action for wrongful discharge, *sua sponte*, without the benefit of briefing or argument. *See English*, 1988 WL 30288, p. 1015, fn. 3. *Chrisman v. Philips*, a Kansas Supreme Court case, concerned a wrongful discharge action by an employee in the nuclear energy industry. The Court in *Chrisman* held that 42 U.S.C. Section 5851 is primarily a safety regulation, and that Congress has preempted the field. That Court declined to determine whether termination of an employee for "whistle-blowing" in nuclear and related industries violated state public policy, because it ruled that Congress preempted the field in that regard as well.

In this case, the Court rules that Section 5851 preempts any state cause of action for wrongful discharge. First, Lumbermen's reasons for discharging Plaintiff can be described as retaliatory acts which arose from his prior safety-related complaints, and as such the federal statute preempts them. The internal nature of the Plaintiff's complaints does not change this. Internal complaints are included by the statute. Secondly, the statute provides an exclusive federal remedy for employee protection in this field, and, therefore, state claims for wrongful discharge of "whistleblowers" in the field of nuclear energy are preempted.

The Court is aware that under the statute, Plaintiff now may be time-barred from bringing this action before the Secretary. Section 5851(b)(1) states that the Plaintiff "may, within thirty days after such viola-

tion occurs, file ... a complaint with the Secretary ..." The Court assumes, without ruling that this means the Plaintiff may not bring an action after this time. Nevertheless, a statute of limitations does not change the fact that the remedy is exclusive. Accordingly, I grant Defendant's motion to dismiss Counts I and III for lack of subject matter jurisdiction on grounds of preemption, and do not reach the question of whether to dismiss Plaintiff's Complaint for failure to state a claim on which relief can be granted.

*Interference with Prospective Employment Opportunities*

■ For the purposes of a motion to dismiss for failure to state a claim on which relief can be granted, the Court may grant Defendant's motion only if it appears that Plaintiff can prove no set of facts which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957) (footnote omitted). Defendant contends that Plaintiff fails to meet the four required elements for the tort of wrongful interference with an advantageous contractual relation. These elements include: "(1) a business relationship or contemplated contract of economic benefit; (2) Defendant's knowledge of such a relationship; (3) Defendant's intentional and malicious interference with it; and (4) Plaintiff's loss of advantage directly resulting from Defendant's conduct." *Powers v. Leno,* 24 Mass.App.Ct. 381, 385, 509 N.E.2d 46, 49 (1987). Defendant claims that the Plaintiff's Complaint has failed to allege the first two elements of the tort. The basis of Defendant's argument is that Plaintiff was employed by the Defendant when the Defendant made the alleged comments to the Public Service Electric & Gas Company; and that Plaintiff had no independent contractual relationship with PSE & G at the time any statements were made. Furthermore, anything which Defendant may have said to PSE & G officials is not actionable because a cause of action demands that there must be an unprivileged interference, which Plaintiff failed to allege in his Complaint. *See Laurendeau v. Kewaunee Scientific Equipment Corp.,* 17 Mass.App.Ct. 113, 456 N.E.2d 767 (1983).

Plaintiff claims that there is a cause of action because the Defendant disseminated untrue and harmful information to PSE & G about the termination of his employment with Defendant, which interfered with prospective employment opportunities in his chosen profession. *See, e.g., Owen v. Williams,* 322 Mass. 356, 77 N.E.2d 318, 320–21 (1948). Plaintiff has not directly alleged that the privilege is lost because the Defendant has some "ulterior" motive. Nevertheless, viewing his Complaint in its entirety, Plaintiff has alleged retaliation by Defendant, and a reasonable inference can be made that this is an "ulterior motive."

Under the standard for a motion to dismiss, the Court cannot rule that Plaintiff is unable to prove any set of facts which would entitle him to relief. There remain questions of fact regarding what was said to PSE & G officials about the Plaintiff, and whether Defendant's statements constituted an ulterior motive, which destroys its privilege. These issues cannot be resolved in a motion to dismiss.

In summary, therefore, Defendant's motion to dismiss Counts I and III on grounds of preemption is granted. Defendant's motion to dismiss Count II is denied.

SO ORDERED.